## Case No. 283.

### The AMERICA.

[8 Ben. 491.][1]

District Court, E. D. New York. July, 1878.

DAMAGE TO CARGO—BILL OF LADING — INHERENT DETERIORATION—BAD STORAGE.

1. Oranges and lemons were shipped on a steamship at Valencia to be brought to New York under a bill of lading exempting the vessel from losses by perils of the seas or from inherent deterioration. On the discharge of the cargo at New York the fruit was found to be mostly decayed, and a libel was filed against the steamer to recover for its loss: *Held*, that on the evidence the cargo had not been so stowed as to permit proper ventilation.

[Cited in The Portuense, 35 Fed. 671.]

2. That it was not incumbent on the libellants to prove that there was no inherent deterioration in the fruit.

3. That the rotting of this fruit was undoubtedly unduly hastened by the manner in which it was stowed; and that the libellants were entitled to recover.

[Cited in The Portuense, 35 Fed. 671.]
[See The Star of Hope, 17 Wall. (84 U. S.) 651.]

In admiralty.

Scudder & Carter, for libelant.
Butler, Stillman & Hubbard, for respondent.

BENEDICT, District Judge. This is an action upon a bill of lading to recover for the loss of a quantity of oranges. The oranges were shipped in Valencia, to be delivered in New York in like good order. The bill of lading is in the ordinary form. It states that the fruit was shipped in good order and condition, and it exempts the ship from liability for damages arising from perils of the seas or from "inherent deterioration." After the shipment of this fruit in Valencia, the steamer went to Malaga, where the position of some portions of the cargo was changed, and other cargo was shipped.

From Malaga the steamer proceeded to Boston, and landed some cargo and thence

---

[1][Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

she proceeded to New York. Upon arrival in New York the fruit was found substantially destroyed by decay. All of it was more or less rotten and it was worth little or nothing. Whereupon this action was brought to charge the steamer with the loss. The evidence renders it necessary to consider only the question of stowage. Upon this point the contention on the part of the libellant is that the damage arose from the cargo being so stowed as to afford no proper ventilation. On the part of the steamer, the bad condition of the fruit on arrival of the steamer is admitted, but the liability of the steamer is denied, first, upon the ground that no uniform mode of stowing so as to secure ventilation in such a cargo exists, and that, by the mode adopted in this case, sufficient ventilation was secured; and, second, that the evidence leaves it in doubt whether the decay of the oranges did not arise from inherent deterioration.

Upon the whole evidence it appears quite plainly that, after the restowage of the cargo at Malaga, the fruit in question was not so stowed as to secure proper ventilation. The proximity of the engine bulkhead; the absence of a well hole in the cargo under the main hatchway; the stowage of a quantity of dried fruit between the oranges and the fore-hatch; the absence of a booby-hatch over the main hatchway, and the closeness of the stowage by the beams, are facts abundantly sufficient to make out a case of bad stowage in a cargo of this description. The natural result of this mode of stowage would be to cause the fruit to decay, and, in the absence of any other cause, the conclusion must be that the stowage did cause the extraordinary decay which took place.

It has been argued in behalf of the steamer, that the fact, which was proved, that sometimes oranges do decay on a voyage of importation, from inherent deterioration, renders it incumbent upon the libellant, before he can recover, to prove that no inherent deterioration existed in this fruit.

I do not so understand the law to be. The bill of lading states that the fruit was shipped in good order and condition. No witness is called to say that any defect existed in the fruit; and it is going far to say that the possibility that there might be inherent deterioration must prevent the libellant from recovering.

All oranges will rot, but that fact does not prevent the conclusion that the rotting of these oranges was unduly hastened to the damage of the libellant by the manner in which they were transported. My opinion, therefore, is that the libellant has made out a case which entitles him to a decree. Let a decree be entered for the libellant, with an order of reference to ascertain the amount.